The next argument is in Doleck Nepali v. Barr. We'll hear first from counsel to the petitioner. Good morning. May it please the court, Gary Yerman on behalf of Petitioner. I'll cut right to the chase, your honors. Our issue is this. Substantial evidence does not support the immigration judge finding that Petitioner provided any material support to the Maoist organization after they were designated a tier three terror organization on April 29th, 2004. The record is unclear as to whether the petitioner gave any assistance in those three months, May, June, or July, before departing Nepal. What is clear is that Petitioner testified that approximately a month after turning 16, the Maoist came to her parents' home and there was contact with the Maoist. That was in 2001. The record must be remanded to determine if any material support applies based upon those three months, as it is unclear in the record. And at this point, I'll take questions from the court. Thank you. Do you want to address the Hernandez versus Sessions case? It seems somewhat relevant here. We found that even a small amount of food can constitute material support and rejected an implied duress exception. Judge Park, my argument is that the record is unclear whether any assistance was provided in those three months after the designation was made by the State Department, not whether it was minor or not. Okay. If there's not any other questions, I reserved three minutes on rebuttal. Okay. Thank you. We'll hear next from Ms. Igoe. Good morning. May it please the court. Allison Igoe, United States Department of Justice, Civil Division, Office of Immigration Litigation, representing the Respondents. The agency in this case found that Ms. Dollack not only provided meals during that three-month period, but from April 2001, when... And I just want to correct something that Mr. Uriman said. The agency found that the Maoists were a tier three organization from 2001 until 2004, and then was designated a tier two organization for that several-month period. But the board found, the agency, both the immigration judge and the board affirmed, found that she provided at least 57 instances of food and drink to the Maoists during this period of time. So Mr. Uriman is ignoring that part of the decision. But even if... And the evidence clearly supports that. In her interview notes, she explains, and in her declaration, she explains the time period. And on February 13, 2012, at the last hearing in this case, she conceded that her answers at her interview were correct. But even if the court were to find that there was no material support in this case, the agency gave multiple reasons for denying her claim. The agency found that she was not credible, that she did not experience past persecution, that there was no nexus between the harm that she claimed and any grounds supported by the INA. They also found that she did not have a well-founded fear of persecution or that she had not shown a likelihood of future torture. So the court can decide the case on any of those alternate grounds and does not have to reach the material support finding. This evidence in the record substantially supports all of the agency's decisions in that case. When you look at her credibility, you know, she now claims that she was beaten by the Maoists and beaten by the police. And those are the two separate instances on which her asylum claim is based. But in her original interview, all she said was that the Maoists jerked her around and slapped her. That was, she had stated that in her original declaration. And then again at her interview. You can see that once the assessment to refer citing the material support bar came out, her testimony then escalated and she started to describe the treatment as a beating. The same thing with the police, her interaction with the police in her interview, and let me address for a moment, at her interview, she was represented by an attorney. So she had legal help at her interview. And as I previously said, she agreed, conceded at that February 2012 hearing that those statements were correct. And at that hearing, she claimed that she was randomly hit by the police. That they were randomly swinging batons and she happened to be hit on the cheek. She described the fact that she was arrested and held for one day. And she said her situation was disgusting because she was in a urine-filled cell. But she never stated that she was harmed beyond that. She said they did not take her name. They did not take her address or telephone number. And they jerked her around and there were no conditions on her release. Again, after the assessment to refer to an immigration judge with a recommendation to deny her claim, she escalated, you know, her testimony, claiming that she was beaten and thrown around. And but the immigration judge cited all of these reasons. They're very apparent in the record. They're substantial, you know, and the petitioner argues that these don't, you know, these don't have anything to do with her claim, that they're tangential to her claim. But they go to the very heart of her claim. This is a pre-Real ID Act case. So, the reasons that the immigration judge gave had to have been specific and cogent and had to go to, you know, the heart of her claim. But of course, they do because the treatment by the Maoists was the very heart of her claim that she was being persecuted by them. And whether she was jerked and slapped around, which would be harassment and wouldn't necessarily be persecution, or whether she was beaten, those are two very separate things. And Ms. Igoe, could you address briefly or explain to me the difference between the tier two and tier three findings? I take it Mr. Yerman is saying that the evidence about what she did for the Maoists is vague as to timing. And therefore, we can't be sure, or there's not enough evidence to say that she did that after they were designated tier two in those few months. Of course, the BIA ruled to the contrary. But the BIA also said that she provided aid before that time when they were a tier three organization and found that they were under tier three. So, how does that work? Are either of those findings by the BIA wrong? Well, I think Mr. Yerman is not even conceding that there were findings. But I would point the court to the immigration judge's decision in the record, page 229. The immigration judge said that the respondents' interactions with the Maoists occurred between 2001 and 2004. And he, or I'm sorry, she went on to talk about the definition of a terrorist organization. And I'm just looking, and refers to, let me just, the immigration judge explains the difference and found that there were two separate incidents. She had said that the, her interaction with the Maoists began in 2001. They came every two weeks, which is a finding that, of the immigration judge. They came every two weeks, and she was forced to provide them food every time that they came. And the immigration judge separated. And this was actually the subject of a remand. I had originally requested remand with the Dalek's first petition because there was some confusion by the board about the dates. And on remand, the board clarified the dates of the findings about the tier three, which was between 2001 and 2004. And she conceded that she knew it was a terrorist organization, and even testified about the beatings and kidnappings and violence that they engaged in during that period, which satisfies the definition of tier three under the INA. And then the Maoists were separately designated in 2004 as a tier two. That is not. Before you go further, so the government's position is that even if there was no evidence, and of course, I'm not taking a position either way on whether there is, even if there were no evidence that she did anything after April 2004 when they were designated a tier two organization, that she is still barred based on what occurred before April of 2004? Yes, absolutely, because there were two separate time periods. In fact, the board on page five of the administrative record said the immigration alternately found that she provided food from at least 2001 until April 23rd, 2004. And during this period, the group was an undesignated tier three organization. We agree with the immigration judge. And so the board also affirmed that finding. Okay. And is there also a finding that she provided aid after the date in April 2004 when they were officially designated? Yes. That, you can see that on administrative record page four. The board discusses the period of between April of 2004. And specifically, we agree with the immigration judge that during this biweekly provision of food had some effect on the organization's ability to accomplish its goals, and then it refers to the biweekly provision of food from April 29th, 2004 to August 2004 would have constitute approximately seven instances of providing food to the Maoist. So the board separated out these two because there were separate designations. Right. And in the government's view, if there's substantial evidence to support either of those conclusions, we deny review. Yes, certainly. Because the petitioner argues that, you know, she does not disagree with the finding that she provided food during this period. And but she argues that it's not material because it was snacks or it was. But as the court pointed out, you know, the board issued a decision in matter of ACM that said the quantitative amount of support does not matter. There is no, you know, rather floor in the INA. And as the court pointed out in Hernandez, the court. Well, and the board also upheld the finding that she was not credible. So and I must say the idea that the Maoist terrorists come and beat you up and then settle for tea and cookies seems a rather strange factual conclusion to reach. But that is not what she testified. The Maoists did not target her family for tea and cookies. That was something separate when they were there. They demanded to be fed. She testified that they targeted her family because they were wealthy, they had a very successful carpet owning business, and they were looking for money. And that was another inconsistency when she was interviewed by the asylum officer. She said plainly and clearly, my parents paid them, gave them money when they came. The asylum officer said, oh, did you give them money? No, my parents did. And then she tried to back walk that as well. So it wasn't that they targeted her for tea and cookies. That was a separate, you know, sort of a perk, I guess you could say, that, you know, they came for money and they got snacks. But she's claiming that she was not claiming that she provided, and in fact, she denied that she ever provided them with money, but said that she did feed them. And there's, you know, a lot of precedent saying that providing sustenance to a terrorist organization is material support because it allows them to continue, you know, as the board found, it's, you know, a basic human need that the person is satisfying that allows them to continue to engage in their other activities. The agency also found that there was no nexus to a ground supported by the INA. And again, as I said, she said that her family, she claims persecution by the Maoist, you know, as part of a particular social group, that being her family. But in order for that to work for her under the INA, the persecutors had to have persecuted her family for a reason under the INA, political opinion or religion or ethnicity. And again, she clearly stated that they came after her family because they were wealthy and they wanted money. And it was basically extortion, which is a crime, it's not persecution. And as far as the police, her interaction with the police, you know, she, oh, I hear my, I think that's my bell going off. I would just wrap up by saying all of the grounds that the agency provided are supported by substantial evidence. And I would ask the court to deny her petition. Thank you very much. Thank you, counsel. Mr. Uhrman, you've reserved a few minutes for rebuttal. Yes, briefly, I'll address the two issues that Judge Lynch brought up. Number one, in the record AR page 278, the government asks the petitioner, and your last encounter, if you can recall with the Maoist, was when? Answer. Around in 2004, I'm not sure of the exact date, but it was some time before I left. She left in August of 2004. So substantial evidence does not support either the BIA or the immigration judge's finding that she provided any material support after the Maoists were designated terrorist organization in April of 2004. As far as the issue regarding the undesignated tier three, we assert that the court relied on the wrong background, Your Honor. The court looked at the State Department reports from 2010 and 2011, rather than the State Department reports in 2004 and 2005, regarding how the State Department perceived the Maoist organization. The court can't rely simply on respondents' testimony that they were bombing and kidnapping people to declare they were a tier three terrorist organization. And lastly, as far as when this case is remanded back to the immigration court, it will be incumbent upon the court to decide whether the petitioner who entered this country at the age of 20 and for the past 16 years has been politically active on behalf of Tibet, has a reasonable fear of being sent, after being sent back to Nepal, whether she could be persecuted based upon that political opinion. And I think the court bids time. Thank you, counsel. We'll take the case under advisement.